**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| AKIF KHAN, individually,<br>and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE ALLEE CORPORATION<br>d/b/a RUSTY WALLIS HONDA,<br><br>Serve registered agent at:<br>Conrad Kasselman<br>6275 W. Plano Parkway, Ste. 500<br>Plano, Texas 75093<br><br>Defendant. | ) | Civil Action No.: 3:26-cv-3684<br><br>**CLASS ACTION COMPLAINT**<br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>CLASS ACTION COMPLAINT</u>

COMES NOW Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, and through his counsel of record, submits his Class Action Complaint against Defendant The Allee Corporation d/b/a Rusty Wallis Honda, and states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Plaintiff Akif Khan ("Plaintiff" or "Khan") brings this case to protect his privacy rights, namely the right to be left alone from unwanted telemarketing text messages.

2. Khan brings this suit to get companies like The Allee Corporation d/b/a Rusty Wallis Honda ("Rusty Wallis" or "Defendant") to stop sending telemarketing text messages to consumers after the consumers asked Defendant to stop. Such consumers are required to be placed on a company's internal do-not-call list ("Internal DNC List") upon requesting that the communications stop.

3. Khan also brings this suit under Texas law, which gives any person who receives a communication that violates the TCPA, or a regulation adopted under the TCPA, a separate cause of action for damages and an injunction. *See* Tex. Bus. & Com. Code § 305.053.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA affords special protections for people who request that a company no longer contact them yet continue to receive telephone solicitations. The company is required to place the person on the company's Internal DNC List. Specifically, the TCPA provides that each person who receives more than one call within any 12-month period in violation of these regulations is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d).

6. Since 2003, persons who register their cell phone numbers on the National Do-Not-Call Registry are considered to be "residential subscribers" for purposes of Section 227(c)(5). *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'").

7. Highlighting the problems of incessant telemarketing, so far in 2026 alone, approximately 36.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Oct. 19, 2026).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2025 alone, there were over 2.6 million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 6, 2026), available at: https://www.ftc.gov/news-events/news/press-releases/2026/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Oct. 19, 2026).

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over Plaintiff's TCPA claims under 28 U.S.C. § 1331 because they arise under the laws of the United States. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) because it is so closely related to the federal claim that they form a single case or controversy.

12. This Court has personal jurisdiction over Defendant because Defendant is a Texas corporation with its principal place of business in Dallas, Texas, continuously and systematically

transacts business in Texas, sent the text messages at issue to a Texas telephone number, and for the reasons otherwise set forth in this Complaint.

13. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in Dallas County, Texas, and because a substantial part of the events giving rise to Plaintiff's claims occurred here, including Defendant's sending of the text messages at issue from its Dallas dealership.

## PARTIES

14. Khan resides in and is a citizen of Texas and resided in Texas when he received the text messages at issue.

15. Khan is the owner of a cell phone. His cell phone number is 469-XXX-4372.

16. Khan's cell phone number is a personal phone number and not a business line.

17. The monthly bill associated with Khan's phone number is issued in Khan's name, and not in the name of a business.

18. Khan uses his cell phone primarily for residential purposes, such as communicating with friends and family members.

19. Defendant The Allee Corporation is a Texas for-profit corporation in good standing to transact business at all times material to this Complaint.

20. Defendant's principal office is located at 12277 Shiloh Road, Dallas, Texas 75228. Defendant's registered agent is Conrad Kasselman, 6275 W. Plano Parkway, Suite 500, Plano, Texas 75093.

21. Defendant does business as "Rusty Wallis Honda." Defendant sells new and pre-owned vehicles and offers vehicle service and repair.

22. Defendant's website is www.rustywallishonda.com ("Defendant's website"). Defendant's website markets Defendant's vehicles and services to consumers throughout the Dallas-Fort Worth area, including in Garland, Mesquite, Richardson, Rockwall, Heath, Forney, and Terrell.

23. Defendant markets its products and services, in part, through the use of telemarketing text messages.

24. Defendant's website privacy policy tells consumers, "You may always opt-out of receiving future communications from our dealership."

25. Defendant's website privacy policy does not mention text messages, nor does it describe any policy for honoring requests to stop receiving text messages.

**DEFENDANT'S TEXT MESSAGES TO KHAN AFTER HE ASKED DEFENDANT TO STOP**

26. In June 2025, Khan unexpectedly began receiving solicitation text messages on his cell phone from a representative of Defendant.

27. Khan asked Defendant's representative to stop contacting him. Specifically, Khan stated, ". . . please don't contact me. I didn't ask to be contacted."

28. Defendant's representative replied, "thank you and will do."

29. On June 20, 2025, Defendant sent Khan an automated text message confirming his request. It stated, "You have successfully been removed from Rusty Wallis Honda text messages."

30. Defendant thus confirmed, twice, that it had received Khan's request and would stop texting him.

31. Despite Khan's request, and despite Defendant's promises, Defendant continued to send telemarketing text messages to Khan.

32. On August 28, 2025, Defendant sent Khan the following text message:

> Hey Akif, this is Jovany with Rusty Wallis Honda. Are you in the market for a new or pre-owned vehicle? We have special offers going on for Labor Day this weekend! Reply STOP to cancel.

33. On September 2, 2025, Defendant sent Khan the following text message:

> Hello Akif! Is your Honda Ridgeline ready for service yet? Remember to schedule now with Rusty Wallis Honda to get the best service from our quality technicians to maintain your vehicle's value. https://rustywallishonda.com/service/index.htm?utm_source=amp&utm_medium=sms&utm_campaign=sold_ns

34. On September 12, 2025, Defendant sent Khan the following text message:

> Are you interested in a lease upgrade opportunity? We are paying top dollar for vehicles such as yours.
> Luciano Hernandez
> Rusty Wallis Honda
> Sales Consultant
> 214-348-7500 EXT 1210.

35. Each of these text messages identified Rusty Wallis Honda as the company on whose behalf the message was sent.

36. Each of these text messages encouraged Khan to purchase or lease a vehicle from Defendant, sell a vehicle to Defendant, or purchase vehicle service from Defendant. Each text message was therefore sent for telemarketing purposes and was a telephone solicitation. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f).

37. The September 2, 2025, text message directed Khan to a webpage on Defendant's website through a link containing the tracking parameter "utm_medium=sms." On information and belief, this parameter reflects that the message was part of a text message (SMS) marketing campaign that Defendant sent to many consumers.

38. Each of these text messages was sent more than ten business days after Khan asked Defendant to stop contacting him. *See* 47 C.F.R. § 64.1200(d)(3).

39. Khan received more than one text message from or on behalf of Defendant within a 12-month period after he asked Defendant to stop contacting him.

40. On information and belief, Defendant sent additional text messages to Khan that can be identified through discovery.

41. After Khan asked Defendant to stop contacting him, Khan did not provide Defendant, or anyone acting on its behalf, consent of any kind to send him text messages. Khan's request also terminated any established business relationship that may have existed for purposes of telemarketing, although Khan does not concede any such relationship existed. *See* 47 C.F.R. § 64.1200(f)(5)(i).

42. Khan was not in the market for a new or pre-owned vehicle at the time he received the text messages at issue.

43. Khan's phone number has a Dallas-area (469) area code, and Khan was located in Texas when he received the text messages at issue.

44. On information and belief, Defendant or someone acting on its behalf sent text messages to hundreds if not thousands of persons (i.e., putative class members) whose phone numbers should have been placed on Defendant's Internal DNC List because they, like Khan, requested that Defendant stop contacting them.

45. Defendant's conduct violated the privacy rights of Khan and the putative class members, as they were subjected to annoying and harassing text messages.

46. Defendant's conduct intruded upon Khan's and the putative class members' right to be left alone and their interest in seclusion.

47. Defendant's conduct caused Khan and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages.

## DIRECT AND VICARIOUS LIABILITY

48. Without the benefit of discovery, because the text messages disclosed Defendant's identity and the names of Defendant's sales personnel, Khan assumes Defendant directly sent the text messages.

49. However, if discovery reveals that some or all of the text messages were sent by third parties on behalf of Defendant, then Defendant is vicariously liable for those text messages.

50. On May 9, 2013, the FCC determined that outsourcing telemarketing was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re: Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (May 9, 2013) (internal citations omitted).

51. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

52. If Defendant directly sent the text messages at issue to Khan, Defendant is directly liable for those text messages.

53. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of text message marketing by third parties that are currently unknown to Khan and known only to Defendant.

54. In that event, Defendant's third-party marketers had actual and/or apparent authority to act on behalf of Defendant.

55. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting leads and/or deriving profit from sales initiated by unlawful telemarketing text messages.

56. Defendant controlled or had the right to control the marketing activities of those acting on its behalf. Among other things, each text message Khan received identified Rusty Wallis Honda and promoted Defendant's vehicles and services.

57. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' violations of the TCPA.

58. For the counts identified below, if Defendant directly sent the text message(s), it is directly liable. In the alternative, to the extent any text message(s) were sent by a third-party agent acting on Defendant's behalf, Defendant is vicariously liable for those unlawful text messages.

## CLASS ALLEGATIONS

59. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of Rule 23.

60. Plaintiff seeks to represent the following classes:

> **Internal Do-Not-Call Class:** All persons in the United States who from four years prior to the filing of this action through the date a class is certified: (1) Defendant (or someone acting on its behalf) sent more than one text message, (2) within any 12-month period, (3) marketing Defendant's products or services, (4) after the person requested that Defendant (or someone acting on its behalf) stop texting or contacting them.

> **Texas TCPA Class:** All persons whose telephone numbers have a Texas area code who from four years prior to the filing of this action through the date a class is certified: (1) Defendant (or someone acting on its behalf) sent more than one text message, (2) within any 12-month period, (3) marketing Defendant's products or services, (4) after the person requested that Defendant (or someone acting on its behalf) stop texting or contacting them.

61. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

62. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

63. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

64. On information and belief, Defendant has texted and continues to text persons who should be on Defendant's Internal DNC List. It is reasonable to expect that Defendant will continue to send such text messages absent this lawsuit.

65. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

a. Whether Defendant sent text messages to persons who should have been placed on Defendant's Internal DNC List in violation of 47 U.S.C. § 227(c) and the TCPA's corresponding regulations;

b. Whether Defendant maintained and implemented the procedures required by 47 C.F.R. § 64.1200(d);

c. If Defendant did not directly send the text messages at issue, whether an agency relationship exists between Defendant and its text message marketing vendor(s);

d. Whether Defendant ratified the conduct of its vendor(s)/agent(s);

e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA;

f. Whether Defendant's text messages were "telephone solicitations";

g. Whether Defendant's text messages violated 47 U.S.C. § 227 or a regulation adopted under that provision, entitling Plaintiff and the Texas TCPA Class members to relief under Tex. Bus. & Com. Code § 305.053; and,

h. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

66. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

67. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Plaintiff's interests do not conflict with the interests of the proposed classes he seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

68. Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and his counsel are aware of their responsibilities to the putative members of the classes and will discharge those duties.

69. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and

prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

70. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

71. Questions of law and fact, particularly the propriety of sending text messages to persons who should have been placed on Defendant's Internal DNC List, predominate over questions affecting only individual members.

72. Questions of law and fact, particularly whether Defendant sent text messages to persons in Texas in violation of 47 U.S.C. § 227 or a regulation adopted under that provision, predominate over questions affecting only individual members.

73. Defendant has acted or refused to act on grounds that apply generally to the classes, making final injunctive relief or corresponding declaratory relief appropriate with respect to the classes as a whole.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.***
**(Internal Do-Not-Call List Violations – Internal Do-Not-Call Class)**

74. Khan incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

75. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection" may recover up to $500 for each violation, and up to $1,500 for each violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

76. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing, to institute "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity" (i.e., to be placed on Defendant's Internal DNC List). *See* 47 C.F.R. § 64.1200(d).

77. These regulations apply to telemarketing "text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

78. These procedures must meet several minimum standards, including, but not limited to:

> (1) **Written policy.** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> (2) **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> (3) **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
> (4) **Identification of sellers and telemarketers.** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is

being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) **Affiliated persons or entities.** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

79. Defendant failed to implement these minimum standards by repeatedly texting Khan and the putative class members after Khan and the putative class members requested that Defendant stop contacting them.

80. By texting Khan and the putative class members after their numbers should have been placed on Defendant's Internal DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

81. Defendant knew or should have known that Khan and the putative class members did not wish to be texted and wished to be placed on Defendant's Internal DNC List, but Defendant continued to text them. Indeed, Defendant confirmed in writing that Khan had been "removed from Rusty Wallis Honda text messages."

82. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting text messages to phone numbers that should have been placed on Defendant's Internal DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

83. Khan and the putative class members are each entitled to up to $500 per violation of Section 227(c) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23 certifying the Internal Do-Not-Call Class, appointing Plaintiff as the class representative, and appointing Plaintiff's counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the Internal Do-Not-Call Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the Internal Do-Not-Call Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the Internal Do-Not-Call Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the Internal Do-Not-Call Class for all costs; and,

f. Award Plaintiff and the Internal Do-Not-Call Class members such further and other relief the Court deems just and appropriate.

## COUNT II
### Violations of the Texas Business and Commerce Code § 305.053
### (Communications Violating the TCPA – Texas TCPA Class)

84. Khan incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

85. Under Section 305.053(a) of the Texas Business and Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages, or both an injunction and damages. Tex. Bus. & Com. Code § 305.053(a).

86. Section 305.053 reaches any "communication" that violates the TCPA or its regulations. It is not limited to telephone calls. Defendant's text messages are "communications" under Section 305.053.

87. The TCPA directs the FCC to adopt regulations protecting residential telephone subscribers from "telephone solicitations." 47 U.S.C. § 227(c)(1). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4).

88. The FCC's internal do-not-call regulation, 47 C.F.R. § 64.1200(d), is a regulation adopted under 47 U.S.C. § 227. The FCC expressly applied that regulation to telemarketing "text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

89. As set forth above, Khan received from Defendant communications that violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(d). Defendant originated those communications.

90. Khan received the communications in Texas.

91. Khan and the Texas TCPA Class members are entitled to a permanent injunction to prevent any further violations of Chapter 305 of the Texas Business and Commerce Code.

92. Under Section 305.053(b) of the Texas Business and Commerce Code, Khan and each Texas TCPA Class member are entitled to recover the greater of $500.00 for each violation or their actual damages.

93. Under Section 305.053(c) of the Texas Business and Commerce Code, if the Court finds that Defendant committed the violations knowingly or intentionally, Khan and each Texas TCPA Class member are entitled to recover not more than the greater of $1,500.00 for each violation or three times their actual damages.

94. Defendant committed the violations knowingly or intentionally. Defendant confirmed in writing that Khan had been "removed from Rusty Wallis Honda text messages," yet continued to text him.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Akif Khan, individually, and on behalf of all others similarly situated, requests that the Court enter an order pursuant to Federal Rule of Civil Procedure 23 certifying the Texas TCPA Class, appointing Plaintiff as the class representative, and appointing Plaintiff's counsel as class counsel and, also:

a. That Defendant be restrained from engaging in future telemarketing in violation of the TBCC;

b. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure, and that Plaintiff's counsel be named as counsel for the classes;

c. That Plaintiff and all Texas TCPA Class members be awarded statutory damages of $500 for each violation, and up to $1,500 for each violation the Court finds Defendant committed knowingly or intentionally, as provided by Tex. Bus. & Com. Code § 305.053;

d. That Plaintiff recover his attorneys' fees and costs; and,

e. That Plaintiff and all Texas TCPA Class members be granted such other relief as is just and equitable under the circumstances.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Akif Khan demands a jury trial on all issues so triable.

Dated: October 19, 2026

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts Bar No. 61895MO
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
Facsimile: (314) 863-5711
CRoberts@butschroberts.com

THE LAW OFFICE OF CHRIS R. MILTENBERGER, PLLC

*/s/Chris R. Miltenberger*
Chris R. Miltenberger
Bar No. 14171200TX
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
Telephone: (817) 416-5060
Facsimile: (817) 416-5062
chris@crmlawpractice.com

*Attorneys for Plaintiff*